IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

N.S., *a minor, by his mother and next friend,* )
Mary Frances Conley,                                          )
                                                                          )
       Plaintiff,                                                  )
                                                                          )          Civil Action No. 1:23-cv-848 (RDA/IDD)
       v.                                                              )
                                                                          )
PRINCE WILLIAM COUNTY SCHOOL          )
BOARD., *et al.*,                                                 )
                                                                          )
       Defendants.                                            )

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants Christopher Beemer and Jenita Boatwright's (the "Individual Defendants") Motion to Dismiss for Failure to State a Claim (Dkt. 24) and Defendant Prince William County School Board's (the "School Board") Motion to Dismiss for Failure to State a Claim (Dkt. 27). This Court dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). The Motions are now fully briefed and ripe for disposition. Having considered the Motions, the accompanying Memoranda in Support (Dkt. Nos. 25 and 28), Plaintiff N.S.'s Opposition to both Motions (Dkt. 32), and Defendants' Replies in Support of their respective Motions (Dkt. Nos. 34 and 35), the Court DENIES the School Board's Motion to Dismiss and the Court GRANTS-IN-PART and DENIES-IN-PART the Individual Defendants' Motion to Dismiss for the reasons that follow.

I. BACKGROUND

A.  Factual Background[1]

Plaintiff N.S. asserts that he is a gay minor and that he suffered "regular and relentless" anti-LGBTQ+ bullying at the hands of his classmates within the Prince William County public schools system and, in particular, at Ronald Reagan Middle School ("RRMS").  Dkt. 23 ¶ 1.  In Spring 2022, Plaintiff was 14 years old.  *Id*. ¶ 2.

During the 2020-2022 school years, Defendant Christopher Beemer was the principal of RRMS.  *Id*. ¶ 4.  Defendant Beemer was in charge of supervising school personnel and of ensuring that there was a safe school environment.  *Id*.  At all relevant times, Defendant Jenita Boatwright was an assistant principal at RRMS and she was in charge of student discipline and of ensuring that there was a safe school environment.  *Id*. ¶ 5.

Plaintiff asserts that he has a history of being harassed at school.  *Id*. ¶ 6.  In elementary school, Plaintiff was told he was "like a girl" and his parents eventually home-schooled Plaintiff for fifth grade.  *Id*.

In August 2019, Plaintiff returned to Prince William County public schools and began sixth grade at RRMS as an 11-year-old.  *Id*. ¶ 7.  By the time Plaintiff began at RRMS, he identified as gay, which was common knowledge among his peers and school staff.  *Id*. ¶ 8.  During each of his years at RRMS, Plaintiff asserts that he was regularly called slurs, including "fag," "faggot," and "f**ing faggot" and derisively called "gay."  *Id*. ¶ 9.

---

[1] For purposes of considering the Motions, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

On September 11, 2019, while in drama class, several students repeatedly took Plaintiff's belongings and passed them around the classroom, while voicing homophobic slurs. *Id*. ¶ 10. The teacher did not put a stop to it until it happened three additional times, simply stating that the students were "out of control." *Id*. ¶ 10. That evening, Plaintiff's mother, Mary Frances Conley, emailed Defendant Boatwright and other RRMS administrators regarding the incident. *Id*. ¶ 11. RRMS's then-Principal Joseph Murgo replied the following day: "We are on it. Thanks for letting us know!" *Id*.

Plaintiff asserts that, on an ongoing basis, male students – identified as Y.A., C.B., H.B., T.C., J.D., N.F., B.F., G.H., J.J., M.L., T.L., Z.M., N.N., Y.N., K.R., C.R., W.R., M.R., D.S., and C.W. – routinely verbally harassed Plaintiff with homophobic slurs. *Id*. ¶ 12. Plaintiff further asserts that many would physically "shoulder barg[e]" Plaintiff as he walked down the halls and steal his backpack. *Id*. Plaintiff asserts that these activities were "open and notorious, and visible to non-participating fellow students and school staff," and, in particular, visible to Plaintiff's gym teacher. *Id*.

RRMS had rules prohibiting bullying in school. *Id*. ¶ 13. In March 2022, Defendant Beemer acknowledged race-based bullying occurring at RRMS in a memorandum. *Id*. ¶ 13. No similar memorandum was circulated regarding homophobic harassment. *Id*.

On September 24, 2019, Plaintiff participated in a "Sharks and Minnows" game in gym class, and another student (E.Z.) pulled Plaintiff's pants down to his ankles. *Id*. ¶ 14. On September 27, 2019, Ms. Conley signed Plaintiff in late and was approached by Defendant Boatwright regarding the gym incident. *Id*. ¶ 15. Defendant Boatwright, who had not investigated the incident, told Ms. Conley and Plaintiff that, "in sixth grade, boys are always going to 'swat' and 'slap' each other." *Id*. ¶ 15. Later that day, after speaking further with

Plaintiff, Ms. Conley wrote an email to Defendant Boatwright detailing the issues in Plaintiff's drama class as well as the "pantsing" incident. *Id*. ¶ 16. In a second email to Defendant Boatwright and Principal Murgo, Ms. Conley again detailed the "pantsing" incident and inquired into the policy for dealing with the situation, which was "clearly physically violent and defined as sexual harassment under US law." *Id*.

On September 30, 2019, Principal Murgo replied, stating: "I am sorry about the incident involving [N.S.]. We do not tolerate any kind of bullying at Reagan Middle School. Ms. Boatwright will look into your concerns and get back to you with some clarification later today." *Id*. ¶ 17. Later that day, Plaintiff and his parents met with Defendant Boatwright to discuss the gym incident. *Id*. ¶ 18. Ms. Boatwright asserted that Plaintiff had tripped E.Z. before E.Z. pulled Plaintiff's pants down and accused Plaintiff's parents of wanting to "hang [E.Z.] on a cross." *Id*. ¶ 18. Immediately following Ms. Boatwright's comment, Plaintiff's parents terminated the meeting and went to speak to Principal Murgo. *Id*.

In the meeting with Principal Murgo, Plaintiff's parents explained the gym incident, characterizing the incident as bullying of a boy perceived as less masculine, and reported what Defendant Boatwright had said. *Id*. ¶ 19. Principal Murgo advised that he would be the point of contact on all matters involving Plaintiff moving forward. *Id*. ¶ 20. Plaintiff and his parents agreed that Plaintiff would return to gym class so long as a close eye would be kept for bullying incidents and, if required, appropriate corrective action would be taken. *Id*.

On November 12, 2019, M.R., a male student, began discussing oral sex in Plaintiff's art class. *Id*. ¶ 21. A female student retorted that M.R. would perform oral sex for money. *Id*. M.R. then turned to Plaintiff and said: "You'd do it for free, gay boy." *Id*. He then told Plaintiff to "[g]o kiss your boyfriend." *Id*. Plaintiff reported the interaction to his teacher. *Id*. ¶ 22. The

4

teacher then took Plaintiff and M.R. into the hallway and asked M.R. to repeat his comments. *Id.* M.R. refused and the teacher then directed M.R. and Plaintiff back to their seats, which were at the same table. *Id.* No further action was taken with respect to the incident. *Id.*

That day, Ms. Conley sent an email to Principal Murgo, the teacher, and another administrator (Robyn Dudas-Washington) entitled "Overtly sexual bullying; explicit speech in class." *Id.* ¶ 23. She described the art class incident and complained that no action had been taken. *Id.* The following day, Principal Murgo responded: "I am so sorry that this incident occurred." *Id.*

Defendant Beemer became the principal of RRMS in Fall 2020. *Id.* ¶ 26. In Spring 2020, students participated in distance learning due to the COVID-19 pandemic. *Id.* ¶ 24. In Fall 2021, Plaintiff returned to in-person learning at RRMS for eighth grade. *Id.* ¶ 25.

On October 15, 2021, Plaintiff was in the gym locker room surrounded by male classmates when he was suddenly shoved from behind. *Id.* ¶ 27. Plaintiff fell forward into an open locker with a sharp edge and injured his shoulder. *Id.* Ms. Conley discovered the shoulder injury later that day. *Id.* ¶ 28. Plaintiff told her that he had been shoved, that he felt unsafe in class, and that he did not report the injury for fear of retaliation. *Id.* Ms. Conley emailed Plaintiff's teachers and the school nurse regarding the injury. *Id.* ¶ 29. Both teachers said that they would follow up with Plaintiff, but no one followed up at all. *Id.* ¶¶ 29-30.

On December 9, 2021, T.C., B.F., J.J., K.R., and D.S. began surrounding Plaintiff after school let out directly in front of the school building and calling him homophobic slurs, including "fag." *Id.* ¶ 31. K.R. was an administrative assistant's son. *Id.* ¶ 34. Plaintiff alleges that two teachers in the vicinity did nothing and that he felt unsafe and intimidated. *Id.* Ms. Conley observed the boys surrounding Plaintiff in a threatening manner when she came to pick Plaintiff

up from school. *Id*. ¶ 32.  Plaintiff hurried to the car, but the boys called out to Ms. Conley and gave her "the finger." *Id*.  Ms. Conley got out of her vehicle and approached two nearby teachers for assistance. *Id*. ¶ 33.  The teachers said that they would "take care of it." *Id*.  Plaintiff asserts that the teachers walked the boys to Defendant Boatwright's office, where they were met by K.R.'s mother. *Id*. ¶ 34.

Thereafter, Ms. Conley phoned the front office to again report what happened. *Id*. ¶ 34. Her report was, unknown to her, received by K.R.'s mother who told Ms. Conley that she would handle the matter.  *Id*. ¶ 35.  Plaintiff believes that K.R.'s mother brought the matter to the attention of Defendant Boatwright as required by policy.  *Id*. ¶ 36.  Defendant Boatwright did not follow up and no further investigation was conducted.  *Id*. ¶ 37.

That same day, Ms. Conley also emailed Plaintiff's homeroom teacher, Paul Anderson, explaining the bullying to which Plaintiff had been subjected by the five male students.  *Id*. ¶ 38. No RRMS staff followed up with Ms. Conley or Plaintiff.  *Id*. ¶ 39.  Plaintiff did not attend school or swim practice the next day.  *Id*. ¶ 40.

In late 2021, A.S., a female student, began glaring at Plaintiff and blocking him in the hallways.  *Id*. ¶ 41.  Ms. Conley emailed RRMS's Director of Counseling, Amy Covell-Sharek, regarding A.S.'s behavior.  *Id*. ¶ 42.  Ms. Covell-Sharek did not address those concerns.  *Id*.

On January 13, 2022, A.S. shoved Plaintiff into a metal doorframe, injuring his arm.  *Id*. ¶ 43.  A.S. laughed and glared at Plaintiff and did not apologize.  *Id*. ¶ 43.  The incident was witnessed by many students in the hallway.  *Id*.  That evening, Ms. Conley emailed Ms. Covell-Sharek to report A.S.'s behavior; she alleged that A.S. had targeted Plaintiff.  *Id*. ¶ 44.  Ms. Conley separately emailed Mr. Anderson to inform him of the incident.  *Id*.

Mr. Anderson responded that he would "keep an eye out." *Id*. ¶ 45. Ms. Covell-Sharek acknowledged that the incident was "very serious" and included Defendant Boatwright and the school resource office on the email. *Id*. Ms. Covell-Sharek indicated that someone would follow up that day. *Id*. No one followed up as promised. *Id*. ¶ 46.

Five days later, on January 18, 2022, Ms. Covell-Sharek informed Ms. Conley that Ms. Covell-Sharek needed "the administration to investigate" and asked whether Defendant Boatwright or the school resource officer had been in touch. *Id*. ¶ 47. No one had been in touch. *Id*. Ms. Conley advised that she would attempt to be patient while the matter was investigated, but that the incident had increased Plaintiff's anxiety. *Id*. ¶ 48.

On January 19, 2022, Defendant Boatwright met with Plaintiff at school. *Id*. ¶ 49. Defendant Boatwright asked to see Plaintiff's then seven-day-old bruise and, when he showed her, made a dismissive noise. *Id*. Defendant Boatwright then accused Plaintiff of being the cause of any trouble with A.S. *Id*. Plaintiff denied this. *Id*. Plaintiff then asked to see the video footage of the incident with A.S. *Id*. ¶ 50. Defendant Boatwright declined stating: "I don't want to watch it again, because every time I watch it, I see more kids doing stuff they're not supposed to and then I have to address it." *Id*.

That same day, Defendant Boatwright informed Ms. Conley that she and Plaintiff had reached "an understanding" regarding the A.S. incident. *Id*. ¶ 51. Ms. Conley, who had spoken to Plaintiff, informed Defendant Boatwright that she was incorrect. *Id*. Defendant Boatwright stated that A.S. had not deliberately shoved Plaintiff and that Plaintiff had initiated the staring with A.S. *Id*. Believing that Defendant Boatwright was inaccurate, Ms. Conley contacted Ms. Covell-Sharek. *Id*. ¶ 52. In response to Ms. Conley's email, Ms. Covell-Sharek wrote that Plaintiff was made to "feel worse by an adult who is supposed to be on his side" and advised that

she would involve Defendant Beemer, who was "the one person who can intervene." *Id*. ¶ 53. Ms. Covell-Sharek stated that Ms. Conley could expect to hear from Defendant Beemer soon and copied Defendant Beemer on her email. *Id*. Ms. Conley informed Defendants Beemer and Boatwright that she and her husband would make themselves available for a meeting at the Individual Defendants' convenience. *Id*. ¶ 54. Defendant Beemer never contacted Plaintiff's parents until five months later.

Following the January 2022 incident, numerous students continued to make homophobic comments to Plaintiff, including referring to Plaintiff as a "fag" and continuing to "shoulder barg[e]" him. *Id*. ¶ 56. Other incidents included:

- A student making a "straight pride" poster with Plaintiff's face on it and students yelling the phrase at Plaintiff;

- Students yelling "pray the gay away" or "may the power of Christ compel you" at Plaintiff;

- Students shouting homophobic comments at Plaintiff as they launched paper bullets at him during lunch in the cafeteria; and

- Students threatening other students who befriended Plaintiff.

*Id*. These actions were all made in the open and ignored by adults at school. *Id*. ¶ 57. These actions made Plaintiff feel unsafe and unsupported at school. *Id*. ¶ 58. Plaintiff reported many of these incidents to his eighth-grade counselor, Meagan Huntington, including the homophobic remarks that were occurring on a frequent basis. *Id*. ¶ 59.

On May 6, 2022, Ms. Conley wrote Ms. Covell-Sharek and Ms. Huntington that Plaintiff was upset over another incident of harassment by a student who proposed to "get [Plaintiff] in trouble." *Id*. ¶ 60. Ms. Conley asserted that students were targeting Plaintiff for sexual humiliation with impunity and that, as a result, Plaintiff's school work was suffering. *Id*.

8

On May 13, 2022, Plaintiff was in a school bathroom stall when several students began pounding on the stall door, shouting homophobic slurs, and threatening violence. *Id*. ¶ 61. One student shouted, "there's a girl in here," referring to Plaintiff. *Id*. Plaintiff reported the incident to his mother after school. *Id*. ¶ 62. Ms. Huntington also called Ms. Conley advising her of the bathroom incident and expressing concern for Plaintiff's welfare. *Id*.

On May 16, 2022, Ms. Conley expressed to Ms. Huntington her frustration regarding the school's ongoing failure to keep Plaintiff safe and failure to impose consequences on the offending students. *Id*. ¶ 65. No school official took any action with respect to the May 13 bathroom incident. *Id*.

On May 19, 2022, students again followed Plaintiff into a school bathroom and pounded on the stall doors shouting homophobic slurs, shouting "there's a girl in here," and threatening violence. *Id*. ¶ 67. The following day Plaintiff was too distraught to go to school. *Id*. ¶ 68. Ms. Conley reported his absence to the school stating that Plaintiff was "having trouble processing his second violent bathroom attack in less than one week" and that he "does NOT UNDERSTAND why the environment is so hostile against gay students like him." *Id*. (emphasis original). No school personnel followed up with Plaintiff or his parents following this email. *Id*.

On May 20, 2022, Ms. Conley went to RRMS for a meeting with Ms. Huntington to discuss bullying of Plaintiff as an LGBTQ student. *Id*. ¶ 70. During the meeting, Ms. Conley reviewed the incidents that Plaintiff had suffered since sixth grade and the Individual Defendants' lack of response. *Id*. ¶ 70. In response, Ms. Huntington told Ms. Conley that:

- Plaintiff was "not safe" at RRMS and that the situation was likely to get worse for him;

- RRMS school administrators were too afraid of backlash from conservative parents to support Plaintiff;

- Plaintiff's situation was a "Title IX case" because he was being targeted by reason of his sexuality; and

- Ms. Conley should remove Plaintiff from RRMS for his own safety.

*Id.* ¶ 71.

Thereafter, Ms. Conley concluded that it was best for Plaintiff to finish the school year at home. *Id.* ¶ 73. Ms. Conley informed Plaintiff's teachers that: "[Plaintiff] has been the target of life-changing bullying in both of his in-person learning years at Reagan Middle School. It was clear from the beginning of 6th grade that he was perceived as being of a sexual orientation that was not welcome by his peers . . . . We have been advised by a respected staff member that the environment at Reagen Middle School is unsafe for our son due to his orientation. We feel we have no choice but to stop sending him to school." *Id.* In response, Ms. Conley received expressions of sympathy and incredulity, but no one indicated any response to address homophobia at RRMS. *Id.* ¶ 74.

Plaintiff's older sister, C.S., was then-attending Battlefield High School. *Id.* ¶ 75. In late May 2022, C.S. mentioned to a teacher that she may be moving because of the harassment to which her brother had been subjected at RRMS and because of the school's failure to protect him. *Id.* C.S.'s teacher immediately escalated her remarks to the Battlefield vice-principal who called C.S. to his office. *Id.* ¶ 76. C.S. again reported that her brother was being bullied based on his sexual orientation and that school officials were not helping him. *Id.*

On May 31, 2022, a Battlefield school counselor called Ms. Conley to discuss Plaintiff's situation. *Id.* ¶ 77. The counselor stated that she concurred with Ms. Huntington's assessment of the situation. *Id.* The Battlefield counselor also agreed that the matter should be reported as a Title IX violation. *Id.*

In May and June 2022, Plaintiff completed two projects for school. Dkt. Nos. 23 ¶ 79; 23-1; 23-2. The projects are indicative of Plaintiff's distress and include statements like "school is dangerous" and "I hate school." Dkt. 23 ¶ 79. One of the projects was submitted to Mr. Anderson, to whom Ms. Conley had previously raised concerns. *Id.* ¶ 80. Mr. Anderson graded the project stating: "It's fine to draw on your experience and reference other sources, but you neglected some of the requirements of the assignment." Dkt. Nos. 23 ¶ 80; 23-3. There was no school response to Plaintiff's distressed submissions. Dkt. 23 ¶ 80.

On May 30, 2022, Plaintiff received an email through the Prince William County Schools' email system from D.K. – a student at Battlefield. *Id.* ¶ 82. The email was titled "Your last warning" and consisted of the text of the suicide note of Virginia Woolf. *Id.* Ms. Conley reported the email to Ms. Huntington and Linda Dick, a counselor at Battlefield. *Id.* ¶ 83. On June 2, 2022, Ms. Huntington informed Ms. Conley that she was attempting to have RRMS administrators investigate the May bathroom incidents and other harassment reported by Plaintiff. *Id.*

On June 2, 2022, Ms. Conley wrote Defendant Beemer, the Title IX Equity Office, Ms. Covell-Sharek, and Ms. Dick explaining Plaintiff's experiences and requesting an investigation into the students' bullying and RRMS's failure to respond. *Id.* ¶ 84. That same day, Ms. Conley received a call from Defendant Beemer – his first attempt to communicate with her. *Id.* ¶ 85. Ms. Conley told Defendant Beemer that he was not doing his job and Defendant Beemer admitted to having "dropped the ball on this one." *Id.* ¶ 86. Defendant Beemer said that he had discussed the matter with the Title IX coordinator to determine what the school could do proactively and reactively. *Id.*

11

Following the call from Defendant Beemer, Ms. Conley received a call from James Thousand, Plaintiff's science teacher, urging her to withdraw Plaintiff from RRMS because of Plaintiff's difficulty completing assignments. *Id*. ¶ 87. Mr. Thousand appeared to be oblivious to Plaintiff's problems at RRMS. *Id*.

On June 7, 2022, Plaintiff came to RRMS at the direction of his math teacher to take a required Standard-of-Learning math test. *Id*. ¶ 78. Upon his arrival at school, C.B. and H.B., who had previously bullied Plaintiff, met Plaintiff and again bullied him. *Id*. Plaintiff then failed the test because of his distress. *Id*.

On June 10, 2022, Plaintiff's parents filed their formal complaints with the Title IX Equity Officer. *Id*. ¶ 88. On June 17, 2022, Plaintiff's parents requested and attended a meeting with Defendant Beemer to discuss the complaint. *Id*. ¶ 89. At the meeting, Defendant Beemer declined to provide any information. *Id*. In light of Defendant Beemer's unsupportive reaction and fearing for their son's safety, Plaintiff's parents decided to remove him from the Prince William County School system. *Id*. ¶ 91. At the end of the school year, Plaintiff's family moved to England, where Plaintiff's father had grown up. *Id*. ¶ 93.

In a series of letters in September and October 2022, the Equity Office found that – with the single exception of N.N. who admitted to homophobic harassment – no student was found to have committed sexual harassment against Plaintiff. *Id*. ¶ 92. The complaint was dismissed as unfounded. *Id*.

### B. Procedural Background

Plaintiff filed his original complaint on June 29, 2023. Dkt. 1. After obtaining an extension of time to respond, Defendants filed motions to dismiss on November 13, 2023. Dkt.

Nos. 7, 8, 10.  Plaintiff then sought and obtained permission to file an amended complaint.  Dkt. 21.  Thereafter, the Court denied the original motions to dismiss as moot.  Dkt. 22.

On December 21, 2023, Plaintiff filed his Amended Complaint.  Dkt. 23.  On January 12, 2024, Defendants filed the current Motions to Dismiss.  Dkt. Nos. 24; 27.  After an extension of time, Plaintiff filed a consolidated Opposition on February 2, 2024.  Dkt. Nos. 31; 32.  On February 9, 2024, Defendants filed their Replies in support of their Motions.  Dkt. Nos. 34; 35.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint.  *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011).  "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal of the motion is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face."  *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of her claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'"  *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)).  Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted.  *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v.*

*J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . .   Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.").  And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

## III. ANALYSIS

Plaintiff has asserted four causes of action: (i) sex discrimination under Title IX against the School Board (Count I); (ii) an Equal Protection Clause violation against the Individual Defendants (Count II); (iii) a violation of 42 U.S.C. § 1986 against the Individual Defendants (Count III); and (iv) gross negligence against the Individual Defendants.   Together, the Defendants seek dismissal of the entire Amended Complaint.  The Defendants' arguments with respect to each count of the Amended Complaint will be addressed below.

### A.  TITLE IX CLAIM (COUNT I)

Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal assistance."  20 U.S.C. § 1681(a).  To establish a Title IX claim based on student-on-student sexual harassment, a plaintiff must show that: (i) he or she was a student at an educational institution receiving federal funds; (ii) he or she suffered sexual harassment that was so severe, pervasive, and objectively offensive that it deprived him or her of equal access to the educational opportunities provided by his or her school; (iii) the school, through an official who has authority to address the alleged harassment and institute corrective measures, had actual notice or knowledge of the harassment; and (iv) the school acted

with deliberate indifference to the alleged harassment. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646-52 (1999). The School Board challenges Plaintiff's allegations with respect to prongs two, three and four.

      i.      Whether the allegations constitute sex-based harassment

To rise to the level of actionable sex-based harassment, the harassment must be "severe, pervasive and objectively offensive." *Davis*, 526 U.S. at 653. Harassment must have a "systemic effect" and "simple acts of teasing and name-calling among school children" may not be enough. *Id*. at 652. But that is not to say that verbal abuse cannot be sufficient to state a Title IX claim. As the Fourth Circuit has repeatedly recognized, "verbal sexual abuse" can be sufficiently severe or pervasive. *See Doe v. Fairfax County Sch. Bd*, 1 F.4th 257, 275 (4th Cir. 2021) (citing *Jennings v. Univ. of North Carolina*, 482 F.3d 686 (4th Cir. 2007) (*en banc*).

Here, Plaintiff has alleged facts that demonstrate that he was repeatedly verbally and physically abused based on his sex and sexual orientation. Plaintiff describes that, for his two years of in-person learning at RRMS, he faced a daily onslaught of verbal attacks calling him gay, "a girl," and a "faggot," in combination with threats of physical violence and physical attacks. Plaintiff has also alleged facts demonstrating the severe effects that this alleged harassment had on him mentally and physically such that he missed classes, performed poorly on tests, and ultimately withdrew from school. This is sufficient to meet Plaintiff's pleading burden. *See Jennings*, 482 F.3d at 698 (holding that "sex-based verbal abuse" was sufficient where it was alleged to have occurred "frequently"); *see also Bittenbender on behalf of S.B. v. Bangor Area School District*, 2017 WL 1150642, at *3 (E.D. Pa. Mar. 28, 2017) (denying the defendant's motion to dismiss because the plaintiff asserted facts necessary to establish a Title IX claim for sexual harassment and discrimination when the plaintiff suffered student-on-student

sexual harassment, with the plaintiff's perceived sexuality being the "crux of the harassment" leading to comments including "lesbian," "gay," and "you have a disease because you're a lesbian").

The School Board identifies several incidents that it asserts are not plausibly connected to Plaintiff's sex. The School Board correctly notes that some incidents are not alleged to have been related to Plaintiff's sex; namely, the incidents with A.S. appear to have no alleged connection to Plaintiff's sex, other than the fact that they happened to Plaintiff. With respect to the other incidents identified by the School Board, Plaintiff has alleged a sufficient connection to his sex or sexual orientation. To begin with, given Plaintiff's allegations regarding the stream of homophobic insults from his male classmates, and his more specific allegations regarding being attacked in the bathroom, the Court finds that, at this stage of proceedings, Plaintiff has sufficiently alleged facts that plausibly connect the "pantsing" incident and the October 2022 locker incident to Plaintiff's sex or sexual orientation.[2] Plaintiff also alleged that the September 11, 2019 drama incident occurred while students were "voicing homophobic slurs." Dkt. 23 ¶ 10. The Court also finds that the May 2022 email from D.K. is plausibly connected to Plaintiff's sex or sexual orientation at this motion to dismiss stage given the temporal connection between C.S. discussing the bullying of Plaintiff with Battlefield High School administration and the email from D.K. – a Battlefield student.

---

[2] The Court does not determine whether, after further factual development, Plaintiff will be able to conclusively connect the pantsing incident to sex-based discrimination. There could be circumstances where pantsing is sex-based and other circumstances where it is merely middle-school behavior. The Court need not resolve that issue now, but finds that, based upon the operative complaint, Plaintiff has plausibly connected the pantsing to sex-based harassment sufficient to survive a motion to dismiss.

Thus, other than the A.S. incidents, which are not directly connected to Plaintiff's sex, the Court finds that Plaintiff's allegations of daily homophobic harassment combined with threatening physical incidents in the bathrooms, locker rooms, and hallways of RRMS are sufficient to allege severe or pervasive sex-based harassment sufficient to survive the motion to dismiss stage.

ii.     Whether Plaintiff has alleged actual notice

The School Board next argues that Plaintiff has failed to allege that school officials with authority had actual notice of Plaintiff's claims of sexual harassment.  Dkt. 28 at 15.  As the Fourth Circuit has recognized, "complaints, allegations, or reports of gender-motivated harassment (including sexual harassment) are sufficient to show actual notice for Title IX purposes." *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 267 (4th Cir. 2021).

Here, Plaintiff's mother communicated with a variety of staff regarding the alleged sex-based bullying of Plaintiff.  Relevant here, are her communications with Defendant Boatwright, Defendant Beemer, Ms. Huntington, and Principal Murgo.[3]  The "pantsing" incident was reported to Defendant Boatwright – a school administrator – in September 2019 and Plaintiff's mother specifically connected the "pantsing" incident to incidents that are "physically violent and defined as sexual harassment under US law."  Dkt. 23 ¶¶ 14-16.  Not only was Defendant Boatwright notified, but Principal Murgo also received notice of the incident.  *Id.* ¶ 17.  In a

---

[3] At this stage, the Court need not address the dispute between the parties regarding whether other persons may also qualify as persons with authority such that notice to them constitutes actual notice to the school.  The School Board does not dispute that school administrators – like Defendants Boatwright and Beemer and Principal Murgo – qualify as persons with authority.  Because the Court finds that they had actual notice, the Court does not address any other persons who might also have such authority and notice.  Such findings are better saved for summary judgment where the scope of individual School Board employees' authority can be better determined.

meeting with Principal Murgo, Ms. Conley is again alleged to have described the situation as bullying based on sex, because Plaintiff was perceived as "less masculine."   *Id*. ¶ 19. On November 12, 2019, Principal Murgo and another administrator were again notified of "[o]vertly sexual bullying."   *Id*. ¶ 23. [4]   In December 2021, Plaintiff alleges that Defendant Boatwright was alerted that the sex-based bullying was continuing into the new school year.[5]   *Id*. ¶¶ 34-36.   Furthermore, Ms. Conley's conversations with Ms. Huntington reveal that Ms. Huntington had been reporting Ms. Conley's complaints regarding the sex-based bullying of Plaintiff to school administrators in May and June of 2022.   *Id*. ¶ 71 (alleging that Ms. Huntington communicated her knowledge that the administrators would not act to protect Plaintiff); *id*. ¶ 83 (alleging that Ms. Huntington had been in communication with administrators regarding the bathroom incidents and other harassment reported by Plaintiff). In June 2022, before the final incident of sex-based bullying that Plaintiff alleges that he experienced at RRMS, Defendant Beemer was informed that Plaintiff had dealt with anti-gay bullying throughout his time at RRMS.   *Id*. ¶¶ 84-86. [6]

---

[4] It is unclear at this stage of the proceedings whether Defendant Boatwright, Principal Murgo, or other administrators notified Defendant Beemer – as the incoming principal – regarding the issues involving Plaintiff.

[5] Plaintiff alleges that Defendant Boatwright's assistant was notified about the December 2021 incident and that, upon information and belief, the assistant acted in conformance with school policy to notify Defendant Boatwright.   Dkt. 23 ¶¶ 34-36.   This is all that Plaintiff can allege in good faith because whether this in fact happened is information in the School Board's possession.   Plaintiff's good faith allegation is not so conclusory or speculative that it fails to support Plaintiff's claim.

[6] It is unclear from the Amended Complaint whether Ms. Conley's prior communications in January 2022 with Defendant Beemer referenced sex-based bullying or simply the incidents with A.S. that appear devoid of allegations linking them Plaintiff's sex.   Although Plaintiff later alleges that Defendant Beemer informed Ms. Conley that she could expect to hear from him "soon" regarding Plaintiff's "ongoing victimization," the specific allegations regarding that conversation do not connect the email discussions with Defendant Beemer to sex-based

Based on these allegations, Plaintiff has plausibly alleged that the School Board – through Defendants Boatwright and Beemer and Principal Murgo – had notice that Plaintiff was being sexually harassed during the 2019 school year and that the sex-based harassment continued into the 2021-2022 school year.

iii.      Whether Plaintiff has plausibly alleged deliberate indifference

Finally, the School Board argues that Plaintiff has not adequately alleged deliberate indifference.  Under Title IX, a school acts with deliberate indifference where its "response to the [alleged] harassment or [the] lack [of any such response] is clearly unreasonable in light of known circumstances." *Davis*, 526 U.S. at 648.  "While deliberate indifference is a high standard that requires more than a showing of mere negligence, half-hearted investigation or remedial action will not suffice to shield a school from liability." *Doe*, 1 F.4th at 268 (internal citations omitted); *S.B. ex rel. A.L. v. Bd. of Educ. Of Harford Cty.*, 819 F.3d 69, 76-77 (4th Cir. 2016) (holding that "it is not enough that a school has failed to eliminate student-on-student harassment or to impose the disciplinary sanctions sought by a victim," but where "a school has knowledge that a series of 'verbal reprimands' is leaving student-on-student harassment unchecked, then its failure to do more may amount to deliberate indifference").

Here, Plaintiff's allegations are sufficient to plausibly state a claim under Title IX at this stage of the proceedings.  Even taking the most restrictive reading of Plaintiff's allegations (as argued by Defendants), Plaintiff has alleged that Defendant Beemer was aware on June 2, 2022 of Plaintiff's alleged long-history of sex-based bullying, admitted to having dropped the ball,

---

harassment. Dkt. 23 ¶¶ 53, 85.  On the other hand, Defendant Beemer's response to Ms. Conley's accusations regarding Plaintiff's ongoing sex-based bullying – that he dropped the ball – could be interpreted as an admission that Defendant Beemer was aware of the sex-based bullying. *Id.* ¶ 86.

and recognized that proactive and reactive adjustments were necessary. Dkt. 23 ¶ 86. Yet, when Plaintiff was required to come to RRMS five-days later for mandated testing, no steps had been taken to protect him and he was again accosted in a way that interfered with his learning. *Id*. ¶ 78. And, even after notice to Defendant Beemer and his alleged admission of dropping the ball, no investigation was conducted until Plaintiff's parents filed a formal Title IX complaint. *Id*. ¶¶ 89-92.

Taking a broader view of Plaintiff's allegations, as the Court must, the *school* had been on notice regarding sex-based bullying since 2019 in Ms. Conley's discussions with Principal Murgo and never took any steps to remedy the situation, discipline students, or otherwise protect Plaintiff despite an apparent acknowledgement that the sex-based bullying was occurring. *Id*. ¶¶ 23-24 (Principal Murgo stating "I am so sorry that this incident occurred" after he was informed of "overtly sexual bullying").[7] Plaintiff then alleges that he continued to suffer sex-based bullying that left him physically and emotionally injured and impaired his ability to perform in the classroom, despite continuing to bring the bullying to the attention of teachers, counselors, and administrators. It appears, based on the allegations of the Amended Complaint, that no real investigation into the allegations occurred until 2022 – at which point it would be more difficult for the school to confirm the validity of Plaintiff's allegations. Moreover, there is an acknowledgment that the school's 2022 investigation determined that some sex-based sexual harassment was occurring during the time period after Plaintiff notified Defendant Boatwright of the continued bullying. *Id*. ¶ 92. Finally, supporting Plaintiff's allegations of deliberate indifference are Ms. Conley's conversations with Ms. Huntington, which indicate that the school

---

[7] It is unclear why the School Board does not discuss the lack of action by Principal Murgo.

was aware of the sex-based bullying of Plaintiff, would not respond to inquiries by Ms. Huntington as to how to protect Plaintiff, and would not take any action to protect Plaintiff's physical safety due to concerns regarding political backlash. *Id.* ¶¶ 71, 83.

Plaintiff's allegations are, in essence, that despite allegations of sex-based bullying that the school believed to be credible, the school had decided not to take any remedial action and to essentially leave Plaintiff unprotected. This is sufficient to establish deliberate indifference under Title IX, because the school's response left the harassment "unchecked." *S.B.*, 819 F.3d at 76-77 (4th Cir. 2016); *Doe*, 1 F.4th at 268.

*     *     *

In sum, because Plaintiff has plausibly alleged facts in support of each element of a student-on-student Title IX claim, the School Board's motion to dismiss will be denied.

<h3 style="text-align:center">B.  EQUAL PROTECTION CLAIM (COUNT II)</h3>

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. Courts recognize that the Equal Protection Clause protects a student's "right to be free from sexual harassment in an educational setting." *Feminist Majority Foundation v. Hurley*, 911 F.3d 674, 702 (4th Cir. 2018). Pursuant to the Fourth Circuit's *Feminist Majority* decision, a plaintiff may state an equal protection claim based on deliberate indifference to known student-on-student sexual harassment where the plaintiff alleges: (i) that the plaintiff was subject to discriminatory peer harassment; (ii) that the school administrator responded with deliberate indifference; and (iii) the school administrator's deliberate indifference was motivated by discriminatory intent. *Id.*

In seeking dismissal of the Equal Protection claim, the Individual Defendants rely on the same arguments as the School Board in seeking to dismiss the Title IX claim.  Their arguments therefore fail for largely the same reasons.  As discussed *supra*, at this stage of proceedings, Plaintiff has alleged sufficient facts to plausibly assert that he was subject to discriminatory harassment and that the Individual Defendants were deliberately indifferent.  As courts within this Circuit have recognized, "[d]iscriminatory intent can be inferred where a defendant knows of sexual harassment but takes little or no action to remedy the abuse."  *M.B. v .Chapel Hill-Carrboro City Schs. Bd. of Educ.*, 2021 WL 4412406, at *5 (M.D.N.C. Sept. 27, 2021) (citing *T.E. v. Grindle*, 599 F.3d 583, 589 (7th Cir. 2010)).  Although the allegations of discriminatory intent are stronger with respect to Defendant Boatwright,[8] there are allegations that Ms. Huntington had communicated with the Individual Defendants regarding the harassment and that the Individual Defendants were intending to ignore the allegations out of concern for "conservative backlash."  Dkt. 23 ¶¶ 71, 83.  These allegations are sufficient, at this stage of proceedings, to state a plausible equal protection violation.

### C.  SECTION 1986 CLAIM (COUNT III)

Section 1986 provides a "cause of action against anyone who has knowledge of a § 1985 conspiracy and who, 'having the power to prevent or aid in preventing the commission of' acts pursuant to that conspiracy, 'neglects or refuses to do so.'"  *Strickland v. United States*, 32 F.4th

---

[8] Plaintiff has alleged that Defendant Boatwright was dismissive of the alleged sexual nature of the "pantsing" incident and that Defendant Boatwright asserted that Plaintiff had brought that on himself.  Dkt. 23 ¶ 15.  Moreover, after Ms. Conley specifically raised the incident in the context of sexual harassment, Defendant Boatwright was allegedly adversarial and accused Plaintiff and his mother of wanting to "hang [the other boy] on a cross."  *Id.* ¶¶ 16-18.  These allegations, taken as true, are sufficient to infer discriminatory intent where Plaintiff has alleged that Defendant Boatwright downplayed the harassment and made no effort to stop it.  *See Hurley*, 911 F.3d at 703; *M.B.*, 2021 WL 4412406, at *5.

311, 360 (4th Cir. 2022) (citing 42 U.S.C. § 1986).  Thus, Section 1986 claims are derivative of claims under 42 U.S.C. § 1985(3), which requires plausible allegations of (i) a conspiracy among two or more persons, (ii) who are motivated by a specific class-based discriminatory animus to (iii) deprive plaintiff of the equal enjoyment of rights, (iv) which results in injury to the plaintiff as (v) a consequence of an over act committed in connection with the conspiracy.  *Id.* (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)).

The Individual Defendants correctly note that, to adequately allege Section 1985 conspiracy, a plaintiff must allege facts that demonstrate a "meeting of the minds" to "violate the claimant's constitutional rights."  *Simmons*, 47 F.3d at 1377.  Moreover, the Fourth Circuit has noted that it "has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy."  *Id.*  Here, Plaintiff has failed to allege facts supporting an underlying conspiracy.  Plaintiff's allegations in this regard reveal the lack of facts to plausibly support the existence of a conspiracy, because Plaintiff fails to identify the members of the conspiracy and when they were acting jointly as opposed to based on individual animus.  *See, e.g.*, Dkt. 23 ¶ 23 (alleging that "numerous students, acting jointly, and *in some cases individually*" bullied Plaintiff (emphasis added)); *id.* ¶ 12 (alleging in conclusory fashion that "[t]ypically this harassment was done in concert"); *id.* ¶ 56 (alleging that "[t]hese students, *sometimes acting in concert and sometimes individually*" would hurl homophobic comments at and bully Plaintiff (emphasis added)).  Plaintiff has failed to include allegations from which one could determine that there was a "joint plan of action."  *Scott v. Greenville Cnty.*, 716 F.2d 1409, 1424 (4th Cir. 1983).  Nor has Plaintiff alleged that "there was a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences."  *Simmons*, 47 F.3d at 1378.  Plaintiff's citation to out-of-Circuit authority is unpersuasive in the face of this

Fourth Circuit case law.  Dkt. 32 at 26.  And, although Plaintiff is generally correct that he need not plead the existence of a "formal agreement, signed[,] sealed[,] and delivered," *id*. at 25, Plaintiff's allegations here are insufficient to demonstrate the existence of a conspiracy. Accordingly, the motion to dismiss will be granted with respect to Count III.[9]

### D.  GROSS NEGLIGENCE CLAIM (COUNT IV)

The Individual Defendants also seek to dismiss the gross negligence claims in Count IV. Here, the Court's analysis is driven largely by its recent decision in *B.R. v. F.C.S.B.*, 2023 WL 2464975 (E.D. Va. Mar. 10, 2023).  In *B.R.*, the Court faced a similar motion to dismiss allegations that individual school administrators had committed gross negligence in failing to protect a student who was being sexually harassed.  *Id*. at *22.  There, the Court denied the motion to dismiss because discovery was necessary to determine whether the individual school administrators' conduct rose to the level of gross negligence.  *Id*.  Here too, it is appropriate to deny the motion to dismiss and let this claim proceed to discovery.  *Id*.; *see also Amisi v. Riverside Reg'l Jail Auth.*, 469 F. Supp. 3d 545, 574 (E.D. Va. 2020) ("Whether or not gross negligence has been proved depends on the facts and circumstances of each case, and it is often a difficult task to determine whether the facts and reasonable inferences therefrom in a given case do or do not show gross negligence as a matter of law.").  Accordingly, the motion to dismiss will be denied in this regard.

---

[9] Although the Individual Defendants assert that the Amended Complaint should be dismissed with prejudice, they do not address the Rule 15 standard or futility.  It is not immediately apparent to the Court that amendment of Plaintiff's Section 1986 claim is futile. Although the Individual Defendants did argue that Section 1986 protection does not extend to discrimination based on sexual orientation, the Court need not reach that conclusion here, because the Amended Complaint fails to adequately allege a conspiracy, and the Court would prefer more extensive briefing on the issue before deciding that a class of persons is or is not protected.  Accordingly, the Court will permit Plaintiff leave to amend Count III if he desires to do so.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the School Board's Motion to Dismiss (Dkt. 27) is DENIED; and it is

FURTHER ORDERED that the Individual Defendants' Motion to Dismiss (Dkt. 24) is GRANTED-IN-PART and DENIED-IN-PART.  The Motion is granted with respect to Count III, but is otherwise denied to the extent that the Individual Defendants seek dismissal with prejudice; and it is

FURTHER ORDERED that Count III of the Amended Complaint is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that, if Plaintiff chooses to file an Amended Complaint, he must do so within FOURTEEN (14) DAYS of the issuance of this Memorandum Opinion; and it is

FURTHER ORDERED that Defendants are DIRECTED to file an answer or other responsive pleading within TWENTY-ONE (21) DAYS of the filing of any Amended Complaint or of the expiration of the time to file any such Amended Complaint.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
August 22, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge

25