2025 WL 2734556
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Alexandria Division.

**J.M.H., by his father, John Hahn, Plaintiff,**

v.

**PRINCE WILLIAM COUNTY
SCHOOL BOARD, et al., Defendants.**

Civil Action No. 1:25-cv-15 (RDA/IDD)
|
Signed September 25, 2025

**Attorneys and Law Firms**

Debra Kay Rose, WhitbeckBeglis, Leesburg, VA, for Plaintiff.

Brian P. Ettari, David P. Corrigan, Melissa Yvonne York, Harman Claytor Corrigan & Wellman, Richmond, VA, for Defendants Prince William County School Board, Katharine D. O'Shea.

Heather Kathleen Bardot, McGavin, Boyce, Bardot, Thorsen & Katz, P.C., Fairfax, VA, for Defendant Robert Murphy.

## MEMORANDUM OPINION AND ORDER

Rossie D. Alston, Jr., United States District Judge

**\*1** This matter comes before the Court on Defendant Robert Murphy's Motion to Dismiss (Dkt. 7) (the "Motion"). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is fully briefed and ripe for disposition. Considering the Complaint (Dkt. 6), Defendant Murphy's Memorandum in Support (Dkt. 8), Plaintiff's Opposition (Dkt. 18), and Defendant Murphy's Reply (Dkt. 19), this Court DENIES the Motion for the reasons that follow.

## I. BACKGROUND

### A. Factual Background[1]

This action arises out of an assault which Plaintiff J.M.H. suffered at the hands of fellow students at Patriot High School in Prince William County, Virginia, on December 6, 2023. Dkt. 6 ¶¶ 8, 24. Defendant Robert Murphy was employed as a security specialist by Prince William County Public Schools ("PWCPS") at all times relevant hereto. *Id.* ¶ 5.

Specifically, Plaintiff alleges that Defendant Prince William County School Board (the "School Board") authorized the installation of six EVOLV Weapons Detection Systems ("EVOLV systems") at the entrances to Patriot High School for the 2023-2024 school year. *Id.* ¶ 12. On May 3, 2023, the School Board voted to approve a four-year lease of the EVOLV system to be implemented in all middle and high schools. *Id.* ¶ 13. All persons entering those schools would be required to go through the EVOLV system. *Id.* The School Board's vote to approve funding and installation of the EVOLV system in Prince William County Schools was predicated in part on its commitment to form an "Implementation Committee" with representatives for all stakeholders. *Id.* ¶ 14. According to an April 19, 2023 presentation to the School Board, the "Implementation Committee" would: 1) develop comprehensive communication, training, and implementation plans with consideration of timing, logistics, employee usage, school supplies, and traffic flows; and 2) develop policies and regulations for the use of weapons detection systems to screen students upon entry into school buildings. *Id.* ¶ 15.

Plaintiff alleges that, as of the date of the filing of the Complaint, the School Board had not formed such an "Implementation Committee." *Id.* ¶ 16. Plaintiff alleges that, in the absence of an Implementation Committee, the School Board does not have policies or regulations in place to address complaints about the EVOLV system and that its policies and procedures were inadequate to address complaints that the implementation of the EVOLV system at Patriot High School presented a risk to student safety. *Id.* ¶¶ 17-18.

On November 2, 2023, Dr. Michael Bishop, Principal of Patriot High School, emailed Greg Hood, Associate Superintendent for High Schools, to express his concerns about having to implement the EVOLV system with "very little personnel." *Id.* ¶ 19. In another email to Associate Superintendent Hood dated November 13, 2023, Principal Bishop repeated his specific concern about the lack of personnel in the school building necessary both to operate the EVOLV system and to address incidents within the building. *Id.* ¶ 20. Principal Bishop stated, "Still the same thing we

talked about earlier—if staff are absent or there is an issue inside of the building that station cannot be manned or staffed effectively. I had trouble filling my spots up until the day before we went live. Still an issue." *Id.* The School Board took no action in response to Principal Bishop's specific concerns regarding the risk to student safety without adequate personnel. *Id.* ¶ 22.

**\*2** On December 6, 2025, before arriving at Patriot High School, Student A discussed his plan to confront Plaintiff J.M.H. with Students B and C. *Id.* ¶¶ 25-26. Students B and C agreed to act as backup for Student A when Student A confronted Plaintiff. *Id.* ¶ 27. Student A's father learned of the students' plan to confront Plaintiff and called Patriot High School to alert staff that these students intended to engage in a physical altercation with another student that morning. *Id.* ¶ 28. At approximately 7:04 a.m., a Patriot High School staff member notified Defendant Murphy that a parent had called to report a concern that his son intended to confront another student and could engage in a physical altercation. *Id.* ¶ 29. Defendant Murphy responded that he would find the student after the first class started since all the students were entering the building at that time through the EVOLV systems. *Id.* ¶ 30.

During the 2023-2024 school year, Patriot High School required all students arriving at school to go directly to an assigned common area to wait for a bell notifying them to go to their first class due to the time required to get all students through the EVOLV systems. *Id.* ¶ 32. In the 2023-2024 school year, Patriot High School had an enrollment of approximately 2,200 students, which meant there were hundreds of students assigned to each common area prior to the start of school. *Id.* ¶ 33. Plaintiff was assigned to Commons 1. *Id.* ¶ 34.

Before the bell for first class, Plaintiff was sitting in Commons 1 at a table, socializing with other students. *Id.* ¶ 35. At approximately 7:16:20 a.m., Students A, B, and C entered Commons 1, and Student B pointed to the corner where Plaintiff was sitting. *Id.* ¶ 36. At approximately 7:16:40 a.m., Student A, with Students B and C behind him, approached Plaintiff. *Id.* ¶ 37. Student A confronted Plaintiff about an alleged verbal exchange between Plaintiff and Student A's sister the previous day in gym class. *Id.* ¶ 38. Then, Student A punched Plaintiff in the face. *Id.* ¶ 39. Plaintiff fought back against Student A. *Id.* ¶ 40. Other students noticed the commotion and immediately a crowd of students formed to watch the fight. *Id.* ¶ 41.

At approximately 7:17:30 a.m., Assistant Principal Emily Utter radioed that she needed security in Commons 1. *Id.* ¶ 42. At approximately 7:17:40 a.m., Plaintiff stood up from where he had been fighting with Student A and attempted to walk away. *Id.* ¶ 43. Students B and C rushed up behind him. *Id.* Student C punched Plaintiff in the back of the neck while he and Student B pushed Plaintiff into the hallway. *Id.* Students B and C continued to punch Plaintiff in the head and torso as they pushed him into an adjacent hallway. *Id.* ¶ 44. Student C slammed Plaintiff to the ground causing Plaintiff to hit his head on the ground. *Id.* Plaintiff was unconscious as he laid face down and arms out on the ground. *Id.* ¶ 45. Students B and C continued to kick and punch Plaintiff in the head, shoulder, and torso while he laid face down and unconscious on the ground. *Id.* ¶ 46. Video footage of the attack captured audio of someone yelling, "Die white boy" and "Kill that white boy." *Id.* ¶ 47. Other students intervened to stop the attack and move the crowd away from Plaintiff as he laid face down and motionless on the floor. *Id.* ¶ 48. School security cameras and witnesses captured videos of the attack from multiple angles. *Id.* ¶ 49.

At approximately 7:18 a.m., Defendant Murphy and other staff members arrived on the scene and attempted to get through the crowd of students to where Plaintiff was on the floor. *Id.* ¶ 50. Defendant Murphy observed Plaintiff lying on the floor prior to reaching him. *Id.* ¶ 51. At approximately 7:18:25 a.m., Defendant Murphy knelt down by Plaintiff and helped Plaintiff stand up. *Id.* ¶ 52. Defendant Murphy did not call 9-1-1. *Id.* ¶ 53. At approximately 7:19 a.m., Defendant Murphy escorted Plaintiff to an empty classroom near where the attack ended in the hallway. *Id.* ¶ 54.

**\*3** Officer Michael Fink, a School Resource Officer with the Prince William County Police Department, also responded to the scene. *Id.* ¶ 55. Officer Fink called Defendant Katharine O'Shea, a nurse at the school, and asked that she come to the classroom to evaluate Plaintiff. *Id.* ¶ 55. Nurse O'Shea arrived and decided to bring Plaintiff to her office to be checked for a possible concussion. *Id.* Officer Fink and Nurse O'Shea escorted Plaintiff to Nurse O'Shea's office. *Id.* ¶ 56. Officer Fink asked Plaintiff and Nurse O'Shea if he should call for an ambulance. *Id.* ¶ 57. Plaintiff declined the offer of an ambulance. *Id.* Nurse O'Shea did not respond to Officer Fink about calling an ambulance and did not instruct any person to call an ambulance for Plaintiff. *Id.* ¶ 58. Officer Fink asked Plaintiff what happened. *Id.* ¶ 59. Plaintiff explained to Officer Fink and Nurse O'Shea what he remembered prior to Students B and C getting involved. *Id.* Officer Fink

reported that Plaintiff said he did not remember everything that happened to him. *Id.*

On December 12, 2023, Nurse O'Shea emailed Defendant Murphy a report of her evaluation of Plaintiff from December 6, 2023. *Id.* ¶ 60. Nurse O'Shea reported that at 7:20 a.m. on December 6, 2023, she was called to see a student in a room behind Commons 1. *Id.* ¶ 61. She wrote the following:

> Student was very dazed and sluggish appearing. Presented with dizziness. Pupils equal and reactive to light. [B]rought to clinic via wheelchair. Dried blood noted behind L ear. C/o Rt jaw pain, has rt shoulder pain with limited ROM without pain. Student was seen for concussion and had plan in October.

> Parents were contacted by admin for parent pick up. Student stated he hit his head against the wall after being hit by another student and that there was no loss of consciousness.

*Id.* In her report, Nurse O'Shea also detailed the treatment she provided to Plaintiff on December 6, 2023:

Treatment:

> ice to shoulder and law [sic]. Concussion screening completed.

> The student answering slowly, denies HA, was dizzy at first but by 7:50 was denying any more dizziness. Parents were given a copy of the concussion Screening form and an ace form and were taking him to the E.R.

*Id.* ¶ 62. Nurse O'Shea did not call 9-1-1. *Id.* ¶ 63.

While Plaintiff was being evaluated by Nurse O'Shea, Officer Fink went to the school security office where he interviewed students who witnessed the attack. *Id.* ¶ 64. One student showed Officer Fink a video he recorded of the fight. *Id.* ¶ 65. Officer Fink reported the video showed Plaintiff lying on the ground, not moving. *Id.* Officer Fink returned to the nurse's office where he obtained a written statement from Plaintiff at 8:12 a.m. *Id.* ¶ 66.

At approximately 8:30 a.m., Plaintiff's parents arrived at Patriot High School. *Id.* ¶ 67. Waiting in the front office of Patriot High School, Plaintiff's parents overheard a school employee state that a parent called earlier to say the "fight" was going to happen. *Id.* ¶ 68. At approximately 8:31 a.m., Officer Fink met with Plaintiff's parents in the nurse's office. *Id.* ¶ 69. In Officer Fink's initial school report, he noted that he observed Plaintiff to have "noticeable redness, swelling, and contusions to his face and ear." *Id.* Officer Fink also stated that Nurse O'Shea had observed symptoms of a concussion. *Id.*

Approximately an hour and a half after the attack, Plaintiff's parents took Plaintiff to the UVA Prince William Emergency Department. *Id.* ¶¶ 70-71. At the Emergency Department, Plaintiff was treated for right shoulder pain, jaw pain, and dizziness. *Id.* ¶ 72. He was administered medications for pain and underwent a CT scan of sinus facial bones, head, and spine. *Id.* Medical staff also performed an x-ray of his right shoulder and elbow. *Id.* Plaintiff was diagnosed with a concussion. *Id.* On December 8, 2023, Plaintiff was seen by a physician at a pediatric provider. *Id.* ¶ 73. The examination notes indicate several visible lacerations around the head and ear and that Plaintiff continued to report pain in his neck, jaw, and shoulder. *Id.*

**\*4** Treatment for Plaintiff's physical and emotional injuries required regular appointments with medical professionals for months after the assault. *Id.* ¶ 74. Plaintiff continues to experience pain and suffering from the injuries he sustained in the attack and will require medical treatment for the foreseeable future. *Id.* The concussion and mental health impact to Plaintiff significantly impaired his ability to perform academically. *Id.* ¶ 75. Plaintiff's injuries also impacted his ability to continue playing baseball, a sport he has loved since he was a young boy. *Id.* ¶ 76. Specifically, the shoulder injury resulted in Plaintiff no longer being able to throw the ball well, effectively ending his hopes of pitching in college one day. *Id.* At no time following the attack did any staff from Patriot High School or PWCPS contact Plaintiff or his parents to inquire about his condition or offer any support. *Id.* ¶ 77. Plaintiff was not able to return to school until January 15, 2024, at which time he was placed on Homebound instruction through February 26, 2024. *Id.* ¶ 78.

## B. Procedural Background

On January 8, 2025, Plaintiff filed his Complaint in this action alleging two substantive due process claims under 42 U.S.C. § 1983 against the School Board (Counts I and II), a gross negligence claim against Nurse O'Shea (Count III), and a gross negligence claim against Defendant Murphy (Count IV). Dkt. 6 ¶¶ 96-130. On February 6, 2025, Defendant Murphy filed his Motion to Dismiss the claim against him. Dkt. 7. On March 14, 2025, Plaintiff filed his Opposition. Dkt.

18. On March 17, 2025, Defendant Murphy filed his Reply. Dkt. 19.[2]

## II. LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.' " *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, *see Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015), but they "may consider documents ... attached to the motion to dismiss, as long as they are integral to the complaint and authentic[,]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

## III. ANALYSIS

In his Motion, Defendant Murphy argues that Plaintiff's claim against him fails as a matter of law because (1) Plaintiff has failed to identify any duty which Murphy owed to him, and (2) reasonable persons cannot differ in concluding that the facts, as alleged, do not establish that Murphy acted in a grossly negligent manner. Dkt. 8 at 1-2. Because the Court finds that Plaintiff has sufficiently pleaded facts supporting a legal duty and gross negligence at this stage, the Court will deny the Motion.

### A. Whether Plaintiff Has Identified a Duty Defendant Murphy Owed Him

"Negligence ... is not actionable unless there is a legal duty, a violation of the duty, and consequent damage." *Burns v. Gagnon*, 727 S.E.2d 634, 641 (Va. 2012) (quoting *Marshall v. Winston*, 389 S.E.2d 902, 904 (Va. 1990)). The allegation that a duty existed is a legal conclusion that is not presumed to be true at the motion to dismiss stage. *See Iqbal*, 556 U.S. at 678. "The complaint must include factual statements that sufficiently support the existence of the duty that the defendant owed to the plaintiff." *Wenzel v. Knight*, 2015 WL 3466863, at *12 (E.D. Va. June 1, 2015).

**\*5** The Supreme Court of Virginia has held that school officials have a common law duty to "supervise and ensure that students could have an education in an atmosphere conducive to learning, free of disruption, and threat to person." *Burns*, 283 Va. at 671 (cleaned up). In that case, the Supreme Court of Virginia also remanded the case for a determination whether a school administrator otherwise assumed a duty regarding a specific fight because he told a student that he would "alert security" and "take care of it." *Id.* at 673. Judges within this District have held that, "[b]ecause a school has an obligation to adequately supervise the activities of students within its charge and may be held liable for a foreseeable injury proximately related to the absence of such supervision, whether a duty of care exists may turn on the factual circumstances of the case." *DJ ex rel. Hughes v. Sch. Bd. of Henrico Cnty.*, 488 F. Supp. 3d 307, 340-41 (E.D. Va. 2020).

Here, Plaintiff has stated facts in his Complaint to support his allegation that Defendant Murphy owed him a duty of supervision and care. As a preliminary matter, Plaintiff alleges that he was a minor, thus he was required to attend school, and that he was attending Patriot High School during the relevant time. Dkt. 6 ¶¶ 1, 8, 24, 78. Plaintiff alleges that Defendant Murphy was employed as a security specialist at Patriot High School. Dkt. 6 ¶ 5. Plaintiff notes that he is not in possession of the job description for the Defendant's position at this stage, as that would require discovery, but the Court nevertheless finds that it is a reasonable inference that a "security specialist" would have had skills and training in the relevant safety and security protocols, and Plaintiff has pleaded no facts that would undercut that inference. Moreover, Plaintiff alleges that, at approximately 7:04 a.m. on the relevant morning—approximately 12 minutes before the incident began—a

Patriot High School staff member notified Defendant Murphy that a parent had called to report a concern that his son intended to confront another student and could engage in a physical altercation. *Id.* ¶ 29. Much like the defendant in *Burns*, Plaintiff alleges that Defendant Murphy responded that he would find the student after the first class started since all the students were entering the building at that time through the EVOLV systems. *Id.* ¶ 30. Accordingly, following the Supreme Court of Virginia's decision in *Burns*, the Court finds that Plaintiff has adequately pleaded that Defendant Murphy owed Plaintiff a duty and will deny the Motion on this basis.

**B. Whether Reasonable Persons Could Differ as to Whether Defendant Murphy Acted in a Grossly Negligent Manner**

"The gross negligence standard is higher than the general negligence standard." *B.R. v. F.C.S.B.*, 2023 WL 2464975, at *22 (E.D. Va. Mar. 10, 2023). "Gross negligence is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Elliott v. Carter*, 791 S.E.2d. 730, 732 (Va. 2016). To prevail on such a claim, Plaintiff must show "a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Id.* "Ordinarily, this question is reserved for a jury." *B.R.*, 2023 WL 2464975, at *22. "Indeed, because evaluating a gross negligence claim is a fact-laden inquiry, courts are hesitant to resolve such claims at the motion-to-dismiss stage." *Id.*

At this stage, a court asks whether "reasonable minds [could] differ as to whether the defendant[s] acted in a grossly negligent manner." *Kabana v. United States*, 2022 WL 989014, at *5 (E.D. Va. Mar. 31, 2022). "Whether or not gross negligence has been proved depends on the facts and circumstances of each case, and it is often a difficult task to determine whether the facts and reasonable inferences therefrom in a given case do or do not show gross negligence as a matter of law." *Amisi v. Riverside Reg'l Jail Auth.*, 469 F. Supp. 3d 545, 574 (E.D. Va. 2020) (cleaned up) (quoting *Walloer v. Martin*, 144 S.E.2d 289, 292 (Va. 1965)). "As a result, courts frequently deny motions to dismiss

gross negligence claims as premature without the benefit of fact discovery." *B.R.*, 2023 WL 2464975, at *22 (collecting cases).

 **\*6** Here, Plaintiff has pleaded sufficient facts for his gross negligence claim to go forward against Defendant Murphy. Defendant Murphy argues that the only information provided to him before the incident was "that Student A *might* engage in a physical altercation with an *unknown* student." Dkt. 8 at 13. Defendant Murphy further argues that the Court should infer that Murphy knew that the students would be under adult supervision in a common area until the bell rang. *Id.* Thus, Defendant Murphy argues that his actions "cannot shock fair-minded persons, especially considering Murphy was assigned to and actively managing 2,200 students through a weapons' security system at the time he was approached by the staff member at 7:04 a.m. with very limited information regarding Student A." *Id.* at 13-14. Reasonable minds could differ, however, as to whether Defendant Murphy's response that he would find the student after the first class started is exercising even "some degree of care" in response to the report from Student A's father. *Elliot v. Carter*, 791 S.E.2d 730, 732 (2019). That question may be better answered after discovery into what exactly Defendant Murphy knew, when he knew that information, and what he did or did not do in response. Thus, the Court will also deny Defendant Murphy's Motion on this basis.

IV. CONCLUSION

Accordingly, for the foregoing reasons, it is hereby

ORDERED that Defendant Robert Murphy's Motion to Dismiss (Dkt. 7) is DENIED.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all counsel of record.

It is SO ORDERED.

**All Citations**

Slip Copy, 2025 WL 2734556

Footnotes

1       For purposes of considering the Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

2       The other Defendants have pending motions that will be addressed separately.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.